UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cr-80210-ROSENBERG/REINHART

UNITED STATES OF AMERICA,

v.

JEAN CLAUDE MILA, JR.,

        Defendant.
_____/

**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS**
**[ECF Nos. 24, 29]**

    Jean Claude Mila, Jr., is charged in a one-count indictment with being a felon in possession of three firearms and two kinds of ammunition. ECF No. 3. The firearms and ammunition were seized when the Palm Beach Sheriff's Office (PBSO) executed two search warrants at Mr. Mila's house on June 1, 2023. While executing the first search warrant, PBSO deputies found the firearms and ammunition in a closed cabinet in the garage at the house; they also found a magnification scope on the kitchen table. Before seizing the firearms and ammunition, PBSO obtained a second search warrant. The only material difference between the warrants was that the affidavit for the second search warrant included two paragraphs saying (1) that the firearms and ammunition had been found in a closed cabinet in the garage, and (2) that Mr. Mila had a prior conviction for being a felon in possession of a firearm. *Compare* ECF No. 42-1 (application for the first search warrant) *with* ECF No. 42-2 (application for the second search warrant).

Mr. Mila moves to suppress the firearms and ammunition. ECF Nos. 24, 29. He says the affidavit supporting the first warrant was so lacking in probable cause that PBSO could not have reasonably relied on it. He also says that the search exceeded what was authorized by the warrant. He says the affidavit in support of the second warrant omitted material facts that would have negated a finding of probable cause—specifically, that Mr. Mila's wife lived at the house and was not prohibited from possessing firearms.

I conducted a suppression hearing where the evidence comprised only the two warrant packages and approximately three body camera videos showing the deputies executing the search. *See* ECF No. 41. Together, the videos lasted a total of 45 minutes.

## THE SEARCH WARRANT AFFIDAVITS

According to the search warrant affidavits, J.R. was killed by a rifle shot in Belle Glade on May 23, 2023, at 6:25 p.m. ECF No. 42-1 at 3. Another man, R.B., was injured in the shooting. *Id.* Years prior, in 2011, Mr. Mila's brother was killed in a shooting. *Id.* at 7. J.R. was suspected of being involved in that earlier killing. *Id.*

Video surveillance showed a Mitsubishi Lancer sedan in the vicinity of the May 23 shooting at the time of the crime, and in the likely position where the shot originated. *Id.* at 5. Using the SkyView surveillance systems, PBSO was able to reconstruct part of the Lancer's route after the shooting. *Id.* at 5–7. Other video surveillance cameras, including one from a church, showed the Lancer driving shortly before the shooting. *Id.* In particular, PBSO obtained video surveillance showing the

Lancer "traveling south on 7th Street from A Parkway towards E Canal Street N" at 5:55 p.m. *Id.* at 7.

Mr. Mila's house is located at the northeast corner of A Parkway and 7th Street. *Id.* It had surveillance cameras on the outside. Detective McCullough, the affiant for the first and second search warrants, swore that "it is documented that" Mr. Mila believes J.R. is responsible for his brother's death. *Id.* The affiant also swore that Mr. Mila has solicited several people to shoot and kill the people who killed his brother, including J.R. *Id.* As the investigation into J.R.'s death continued, the affiant received information that two of the people that Mr. Mila had allegedly solicited in the past were responsible for the May 23 shooting. *Id.* at 7–8.

Based on this evidence, a Palm Beach County Judge issued a search warrant for Mr. Mila's home. *See generally* ECF No. 42-1. The first search warrant authorized PBSO to seize "[s]urveillance cameras and storage equipment" and "[d]ocumentation or correspondence establishing ownership or occupancy of the residence or the property found therein." ECF No. 42-1 at 11. The second serach warrant authorized PBSO to seize firearms, ammunition, and firearm accessories. ECF No. 42-2 at 11.

## OTHER EVIDENCE

At the evidentiary hearing, the Government presented body camera videos from the PBSO officers during the search of Mr. Mila's home. The body camera videos showed the officers arriving at the house. Mr. Mila was fully cooperative. Before entering the house, the officers asked Mr. Mila about the video surveillance cameras. Mr. Mila told them the cameras were not operative.

Based on the time stamp on the body camera videos, the searching officers opened the garage cabinet at approximately 4:40 p.m. When they found the guns and ammunition, their spontaneous utterances were, "There it is" and "There you go."

## LEGAL PRINCIPLES

The evidentiary burden at a suppression hearing is a preponderance of the evidence. *See United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974). On his Motions to Suppress, Mr. Mila bears the burdens of proof and persuasion. *United States v. Touset,* 890 F.3d 1227, 1231 (11th Cir. 2018) (individual challenging a search bears burdens of proof and persuasion). The Government bears the burden of establishing the good faith exception to the exclusionary rule. *See, e.g., United States v. Robinson,* 336 F.3d 1293, 1297 (11th Cir. 2003) (good faith exception).

Probable cause for a search warrant exists where the facts and circumstances presented to the Court are sufficient "to warrant a man of reasonable caution in the belief that" a crime has been committed and that evidence, contraband, or instrumentalities of that crime exists at the location to be searched. *See Carroll v. United States,* 267 U.S. 132, 162, (1925); *see also Brinegar v. United States,* 338 U.S. 160, 175 (1949) (citing *Carroll*, 267 U.S. at 132). Probable cause may be predicated on hearsay or other evidence that would not otherwise be admissible at a trial. *United States v. Ventresca,* 380 U.S. 102, 108 (1965). Ultimately, in evaluating a proposed search warrant, the judge is "'simply to make a practical, common sense decision whether, given all the circumstances set forth in the Affidavit before him, including the veracity and the basis of knowledge of persons supplying hearsay information,

4

there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Jiminez,* 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting *Illinois v. Gates,* 462 U.S. 213 (1983)).

> Because probable cause "deals with probabilities and depends on the totality of the circumstances," it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules[.]" It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Probable cause "is not a high bar."

*D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (internal citations omitted).

Where officers executing a search warrant illegally seize evidence, the evidence can still be used against the defendant if the officers relied in good faith on the fact that a judge issued a warrant based on a finding of probable cause. *United States v. Leon,* 468 U.S. 897 (1984). The good faith exception applies in all but four circumstances: (1) where the judge issuing the warrant was misled by information that the affiant knew was false or would have known was false except for reckless disregard of the truth; (2) where the issuing judge wholly abandoned the judicial role; (3) where the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *United States v. Morales*, No. 18-cr-14056, 2019 WL 572660, at *5–6 (S.D. Fla. Jan. 9, 2019) (citations omitted), *report and recommendation adopted,* No. 18-cr-14056, 2019 WL 210717 (S.D. Fla. Jan. 16, 2019). Where it is alleged that the affiant misled the judge by omitting material information, the defendant must show that the omission was knowing or reckless and that probable cause would be absent if the full truth had been told to the judge. *Franks v. Delaware,* 438 U.S. 154, 171–72 (1978). The

defendant must prove the knowing or reckless falsity of the statement by a preponderance of the evidence. *United States v. Novaton,* 271 F.3d 968, 986 (11th Cir. 2001).

## DISCUSSION

*A. Lack of Probable Cause*

Mr. Mila first argues that there was no probable cause to believe that contraband or evidence of a crime would be found at his house. ECF No. 29 at 4. I disagree. There was probable cause to believe that the video surveillance cameras on the outside of the home would have shown the Lancer driving on A Parkway and/or 7th Avenue on the night of the shooting. The location and movements of the Lancer were relevant evidence of who may have been involved in the shooting. The shooting had occurred approximately one week before the warrant was signed, so there was reason to believe that relevant video footage still existed. And, there was no evidence that the cameras were inoperative. Taken together, these facts are sufficient to establish probable cause that evidence of a crime was located at the search location and would be found in the video surveillance evidence.

The Government argues in the alternative that even if there was no probable cause, the good faith exception applies. ECF No. 33 at 12. For the firearms and ammunition, I agree. The PBSO deputies reasonably could have relied on the state court judge's finding that there was probable cause to believe evidence showing the path traveled by the Mitsubishi Lancer had been captured and retained by the surveillance cameras at Mr. Mila's house. The affiant swore that similar evidence had been recovered from another nearby location. The shooting occurred approximately

one week before the first search warrant was signed, so there was reason to believe that relevant video footage still existed. And, there was no evidence that the cameras were inoperative.

For the portion of the first search warrant that authorized seizing evidence of ownership of the house, it is a closer question whether probable cause existed or whether the affidavit was so lacking in indicia of probable cause that the officers could not have relied on it in good faith. I need not reach these questions, however, because there is no evidence before me that PBSO seized any evidence of occupancy, nor does Mr. Mila ask to suppress any evidence of this kind.

B. *Scope of the Search*

Mr. Mila next argues that the officers exceeded the scope of the first search warrant because, in truth, they were searching for guns, and not for what was authorized by the warrant. ECF No. 29 at 5. The warrant authorized a search for "[d]ocumentation or correspondence establishing ownership or occupancy of the residence or the property found therein" and for "[s]urveillance cameras and storage equipment." ECF No. 42-1 at 11.

The record before me does not show that the officers exceeded the scope of the first search warrant by looking in places where the e authorized evidence could not be found. Video footage can be saved and stored on compact discs, thumb drives, and other external storage devices that can be kept in small areas, including in closed containers. Evidence of property ownership can consist of mail that could be kept in drawers, closets, or similar places. The garage cabinet where the firearms and

ammunition were found was large enough that it could have housed cameras, video footage, or recording equipment, as well as evidence of property ownership.

Even if the officers did exceed the scope of the warrant, suppression would not be required. *United States v. Schandl,* 947 F.2d 462, 465 (11th Cir.1991). In that situation, evidence that is properly within the scope of the warrant is suppressed only where there has been a "flagrant disregard" of the terms of the warrant. *United States v. Wuagneux,* 683 F.2d 1343, 1354 (11th Cir. 1982). Here, there is no evidence of flagrant disregard.

### C. Material Omission

Mr. Mila argues that the second search warrant omitted material information. ECF No. 29 at 5–7. Even if it did, Mr. Mila has not shown that the firearms and ammunition should be suppressed.

The second search warrant gave PBSO additional authority to seize "[f]irearms, ammunition, and firearm accessories." ECF No. 42-2 at 11. The affidavit for that warrant said that Mr. Mila had a prior conviction for being a felon in possession of a firearm in 2012. *Id.* at 8. It did not say anything about the other residents of Mr. Mila's home, including his wife. Nor did it offer any direct evidence that connected Mr. Mila to the location in the garage where the firearms and ammunition were found.

Mr. Mila has not shown by a preponderance of the evidence that facts were omitted knowingly or recklessly, as compared to negligently. *See Franks*, 438 U.S. at 171–72 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."). Nor

8

has Mr. Mila shown that probable cause would be defeated if the affidavit contained the missing facts. The state court judge knew that (1) the evidence was found in a garage that was accessible to all who lived in the house—including Mr. Mila, and (2) Mr. Mila had a prior conviction for possessing a firearm when he was not permitted to have one. Even if Mr. Mila's wife could legally possess the firearms and ammunition, the judge could have found probable cause that Mr. Mila jointly possessed the firearms with her.

## CONCLUSION

Mr. Mila persuasively argues that the real purpose of the search of his home was to look for guns, so the warrant was pretextual. I agree that the warrant was a pretext. The affiant swore that the police already had evidence that Mr. Mila had lived at the search location for ten years. His ownership of the property had no relevance to where the Lancer went on the night of the murder. While conducting the search, officers opened drawers and found papers that appear to be mail, which could have been evidence of who lived at the home. There is no evidence in the record before me that any mail or other evidence of ownership or occupancy was seized. Also, the officers had already identified the Lancer and had tracked it to the shooting. It was unlikely that surveillance video from Mr. Mila's house would provide additional helpful evidence, such as the identity of the driver. In short, the police did not need or want the evidence listed in the warrant, but it gave them a way to search Mr. Mila's house. The officers' spontaneous statements when they found the firearms reveal their true intentions.

All that being so, the United States Supreme Court has said that the police officer's motive for a search does not matter if there is probable cause. *Whren v. United States,* 517 U.S. 806 (1996). Here, there was probable cause to search for video surveillance equipment and recordings. Even though that was not what the police really wanted, their conduct did not violate the Fourth Amendment.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress, ECF Nos. [24], [29].

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 4th day of April 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE